UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL A. TAEUSCH, *pro se*, | ) | CASE NO. 1:19-CV-00282 |
| Petitioner, | ) ) ) | JUDGE SARA LIOI |
| v. | ) ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| BRIGHAM SLOAN, Warden, | ) ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Daniel A. Taeusch (hereinafter "Petitioner" or "Taeusch"), challenges the constitutionality of his sentence in the case of *State of Ohio v. Taeusch*, Lake County Court of Common Pleas Case No. 15CR822. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden Douglas Fender[1] ("Respondent") has filed an Answer/Return of Writ. (R. 9), and Petitioner has filed a traverse. (R. 10). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DISMISSED.

---

[1] Although the petition named Warden Brigham Sloan, Douglas Fender is the warden of the Lake Erie Correctional Institution where Petitioner has been incarcerated. (R. 9, PageID# 67).

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Eleventh District Court of Appeals ( "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> {¶ 2} Appellant was indicted by the Lake County Grand Jury on two counts of rape, felonies of the first degree and five counts of gross sexual imposition, four of which were felonies of the fourth degree and one felony of the third degree. The victims of appellant's crimes were his biological daughter and three of her teenage friends. Appellant pleaded not guilty to the charges.
>
> {¶ 3} Ultimately, appellant withdrew his plea of not guilty and pleaded guilty to an amended charge of sexual battery, a felony of the third degree, in violation of R.C. 2907.03(A)(3); and two counts of gross sexual imposition, felonies of the fourth degree, in violation of R.C. 2907.05(A)(5); as well as one count of gross sexual imposition, a felony of the fourth degree, in violation of R.C. 2907.05(A)(1).
>
> {¶ 4} After a sentencing hearing, the trial court ordered appellant to serve a prison term of 60 months on the amended charge of sexual battery, and 18 months on each of the gross sexual imposition charges, each to run consecutively to one another, for a total of 114–months imprisonment.
>
> ***
>
> {¶ 15} Appellant first argues the trial court discounted his alcoholism and mental health issues; he contends these conditions, of which he has suffered from for many years, contributed to his offenses and justified a lesser sentence. We do not agree.
>
> {¶ 16} First, it is unclear why appellant's alcohol abuse should be treated as a mitigating factor. Even though he had consumed alcohol prior to committing the offenses, the psychological evaluation indicates that he did not think alcohol caused him to commit the offenses. And, even if it was a contributing factor, appellant's voluntary intoxication does not ameliorate his actions, especially in light of the fact that he did not seek treatment for his alcohol abuse.

{¶ 17} Further, although appellant was diagnosed with a sexual disorder/sexual addiction, he fails to advance any reason why the trial court should have given this diagnostic impression heightened weight in his favor. The trial court considered appellant's psychological evaluation and appellant's relative mental health issues. The court did not find that appellant's issues should militate in favor of a lesser penalty. Under the facts of the case, we discern no error.

{¶ 18} Next, appellant notes that the trial court's finding that he had failed to obtain treatment for his issues did not account for his present desire to seek treatment for his problems. At the hearing, the trial court observed that appellant's failure to seek treatment, despite being aware of his problems, cast his claims of genuine remorse into question. Appellant had a history of alcoholism and had been dishonorably discharged from the military for a sex offense. Moreover, he had previously, as a younger man, received substance abuse treatment, but failed to respond to the same. Appellant's current desire to be counseled or have treatment does not negate the fact that he had failed to seek the same prior to committing the crimes. The trial court's finding, in light of appellant's history, is reasonable and consistent with the record.

{¶ 19} Appellant also challenges the trial court's finding that his inability to remember some of his conduct provided a basis to question his remorse. While appellant did expressly apologize to the victims at sentencing, which demonstrated some remorse, the trial court was not obligated to accept appellant's representations. *See State v. Dudley*, 11th Dist. Lake No. 2009–L–019, 2009–Ohio–5064, ¶ 22 ("A reviewing court must defer to the trial court as to whether a defendant's remarks are indicative of genuine remorse because it is in the best position to make that determination.") And, in this case, the court found that appellant's "inability to remember some of his conduct, *with no apparent reason for that*," inter alia, provided it with a basis to "question" the genuineness of his remorse. The court's problem with his inability to remember appears to be premised upon appellant's ostensible failure to adequately explain or account for his inability to remember. In this context, appellant's inability to remember could be viewed as a form of deflection or dissociation, either of which could reasonably call into question appellant's genuine remorse. We see no error in the court's finding.

{¶ 20} Appellant next argues the trial court erred in failing to acknowledge that he was "a victim" of sexual abuse; because that experience could have played a role in his behavior, thereby mitigating the severity of his crimes, appellant maintains the court's failure to comment on the issue renders his sentence contrary to law. We do not agree.

{¶ 21} Appellant's first sexual encounter occurred at the hands of a 12–year-old babysitter when he was nine-years old. Although this past experience may have

3

had a negative emotional impact on appellant, appellant admitted, in his psychological evaluation, he has never been forced to do anything sexually. The court did not err by failing to explicitly reference appellant's early sexual experiences.

{¶ 22} Next, in discussing appellant's prior criminal record, the trial court stated: "In terms of recidivism, there is a history of criminal convictions. While in the military, the Defendant was dishonorably discharged after spending time in the brig for a sex offense which involved similar conduct to here, digital penetration." Appellant asserts there is nothing in the record to support the court's finding of digital penetration vis-à-vis the prior offense. While appellant's construction may be accurate, the court's finding could be read to mean that appellant's past offense, which involved sexual conduct with a child, is similar to the underlying offenses, which involved sexual conduct with minors; and, one of the instant offenses involved an alleged digital penetration. Even though it is unclear that the past offense involved digital penetration, the crimes are nevertheless qualitatively similar as they involved sexual conduct with minors.

{¶ 23} Finally, appellant asserts that the trial court's finding that all of the victims suffered psychological harm is unsupported by the record because one of the victims did not submit a victim impact statement. Although one of the victims did not detail any specific psychological harm, a separate victim underscored that she had undergone extensive counseling due to the incident and addressed the court as to other ramifications of her victimization. Given the nature of appellant's conduct and the open-court statements of the similarly-situated victim, the court could reasonably find that even the victim who did not speak suffered psychological harm. And, even if the court erred in drawing this conclusion, any such error is harmless.

*State v. Taeusch*, 2017-Ohio-1105 at ¶¶ 2-4, 15-23, 2017 WL 1136858 (Ohio Ct. App. Mar. 27, 2017).

In addition, the prosecution entered the following facts into the record at the change of plea hearing on February 25, 2016,

Had this case gone to trial the evidence would have shown with regards to Counts, Count 1 between the dates of May 1st, 2015 and June 20th of '15 in Mentor on the Lake, Ohio the Defendant did have sexual conduct with a minor female victim, her initials being J S. The minor female victim was in various stages of sleep when this sexual conduct happened. In Counts 4 and 6, these both occurred simultaneously between March 1st, 2015 and May 31st of 2015. They occurred at the same time in the same room. The victims were also minor female victims, T B and T W. And this involved sexual contact with them, not sexual

4

> conduct. And finally in Count number 7 between September 14th of 2010 and September 14th of 2011, also in Mentor on the Lake, Lake County, Ohio the Defendant had sexual contact with a family member, his daughter. Her initials are M. T. And as stated before, the force involved in this was psychological force by virtue of their relationship.

(R. 9-1, PageID# 240-241, Exh. 22, Tr. 35-36).

## II. Procedural History

**A.     Conviction**

On October 16, 2015, a Lake County grand jury charged Taeusch with two counts of rape in violation of Ohio Revised Code (O.R.C.) § 2907.02(A)(1)(c) & (A)(2), and five counts of gross sexual imposition in violation of O.R.C. § 2907.05(A)(1), (A)(5), & (A)(4). (R. 9, Exhs, 1 & 2). Taeusch initially plead not guilty to the charges. (R. 9-1, Exh. 2).

Pursuant to a written agreement, Taeusch withdrew his not guilty plea and plead to guilty to an amended charge of sexual battery in violation of O.R.C. § 2907.03(A)(3), two counts of gross sexual imposition in violation of section 2907.05(A)(5), and an amended count of gross sexual imposition in violation of section 2907.05(A)(1). (R. 9-1, Exh. 3).

On March 31, 2016, the court dismissed the remaining counts and sentenced Taeusch to sixty months in prison for sexual battery and eighteen months in prison for each gross sexual imposition conviction, all to be served consecutively for an aggregate prison term of 9½ years. (R. 9-1, Exh. 6).

**B.     Direct Appeal**

On May 17, 2016, Petitioner, through new counsel, filed a notice of appeal (R. 9-1, PageID# 104-113, Exh. 7) with the state appellate court, as well as a motion for leave to file a delayed appeal, which was granted. (R. 9-1, Exhs. 8 & 9). He raised the following assignment of

error:

1. The trial court erred by sentencing the defendant-appellant to a consecutive, maximum, 114-month prison term.

(R. 9-1, PageID# 118, Exh. 10).

On March 27, 2017, the Ohio appellate court affirmed the trial court's judgment and sentence. *Taeusch*, 2017-Ohio-1105 at ¶26.

On June 19, 2017, Taeusch *pro se* filed a notice of appeal and a motion for a delayed appeal with the Ohio Supreme Court, which the Ohio Supreme Court granted. (R. 9-1, PageID# 150-163, Exhs. 13-15). He asserted the following proposition of law:

1. Where the record in a criminal case does not contain any factual support for specific findings made by the trial court, and the record establishes that the trial court overlooked mitigating factors this is sufficient to establish the "clear and convincing evidence" standard for appellate review and correction of maximum and consecutive sentences.

(R. 9-1, PageID# 165, Exh. 16). On January 31, 2018, the Ohio Supreme Court declined to accept jurisdiction pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4).

### III. Analysis

**A.  Exhaustion Standard**

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice

exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell,* 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

**B.      Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

7

the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief that are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough; a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.      Application to Petitioner's Ground for Relief**

Petitioner's sole ground for relief asserts that his "due process and constitutional rights were violated when the trial court ignored mitigating factors and could not support its findings of a maximum and consecutive sentence by the record, thereby creating a manifest injustice." (R. 1,

9

PageID# 5). Respondent, however, contends that Petitioner never raised a federal constitutional claim in any state court, and that Petitioner's arguments before the state courts were based solely on state law—therefore, rendering such arguments non-cognizable. (R. 9, PageID# 72-73). In his traverse, Petitioner essentially concedes that his lone ground for relief is defaulted, but argues that his petition should proceed to rectify an alleged fundamental miscarriage of justice. (R. 10).

The Court agrees that the contents of Petitioner's sole ground for relief were not fairly presented to the state courts as distinct federal or constitutional claims. As mentioned earlier, a petitioner can take four actions in his brief which are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton*, 349 F.3d at 877. Nevertheless, it is also well-established that an "isolated allusion to constitutional rights to due process and a fair trial" does not afford adequate notice to the state courts that a Due Process Clause argument is being raised. *Katt v. Lafler*, 271 Fed. App'x 479, 482 (6th Cir. 2008) (gathering cases).

A review of Petitioner's briefs before the state appellate court reveals no reference to any federal law. (R. 9-1, PageID# 117-129). Rather, Taeusch rooted his argument firmly in state law and cited only Ohio case law and the Ohio Revised Code. *Id*. Petitioner argued that the sentencing court failed to properly weigh and consider a number of state law statutory factors.[1]

---

[1] The habeas petition and traverse repeat Petitioner's state-law based arguments, but attempt to characterize any perceived error of state law as tantamount to a due process violation. (R. 1 & 10). The court agrees with Respondent that Petitioner's alleged violations of state sentencing statutes do not raise a cognizable claim. A state court's interpretation and application of Ohio's

10

*Id*. In addition, the state appellate court decision plainly viewed Taeusch's assignment of error as raising only state law claims, and it did not touch upon federal law. *Taeusch*, 2017 WL 11368582017. Because Petitioner did not rely upon federal case law or state case law employing a federal constitutional analysis, did not phrase his assignments of error as violations of federal constitutional law or a denial of a specific federal constitutional right, and did not allege facts well within the mainstream of federal constitutional law when presenting his assignment of error, Petitioner's sole ground for relief should be dismissed as defaulted for lack of fair presentation.

Any claims that Taeusch failed to raise on direct appeal— such as the Due Process claim he purports to raise herein—are defaulted under the well-established doctrine of *res judicata*. *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001), *cert. denied*, 534 U.S. 977 (2001); *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9). Petitioner cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have

---

sentencing laws is not cognizable in a federal habeas corpus action. *See, e.g., Terry v. Trippett*, 62 F.3d 1418 [published in full-text format at 1995 U.S. App. LEXIS 23150], 1995 WL 469424, at *1 (6th Cir. 1995) (TABLE, text in WESTLAW) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (*per curiam*)). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)); *accord Rossbach v. Turner*, 2015 WL 3953063, at *3 (N.D. Ohio June 29, 2015) (sentence that falls within penalty set by statute does not violate Constitution, citing *Austin*). Further, this case does not involve an allegation of unconstitutional judicial factfinding. A mere challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action. The U.S. Supreme Court has ruled that the Sixth Amendment does not prohibit judges from imposing consecutive, rather than concurrent, sentences. *Oregon v. Ice*, 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009); *Adams v. Kelly*, No. 4:09CV137, 2009 U.S. Dist. LEXIS 116726, 2009 WL 5061766, at *11 (N.D. Ohio Dec. 15, 2009); *Shie v. Smith*, No. 1:08CV194, 2009 U.S. Dist. LEXIS 16431, 2009 WL 385617, at *3 (N.D. Ohio Feb. 13, 2009). Federal habeas relief is not available for a claimed error of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

been raised in an initial appeal, but were not, will be barred from consideration on appeal following remand, under the doctrine of *res judicata*. *State v. Hutton*, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); *State v. Gillard*, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), *cert. denied*, 523 U.S. 1108 (1998). Because Ohio law would not permit Petitioner to raise this particular claim, it is defaulted. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal."); *Adams v. Bradshaw*, 484 F. Supp. 2d 753, 769 (N.D. Ohio 2007) ("In circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim."). Therefore, because Petitioner failed to present the same claim under the same theory before the state appellate court and the State's highest court on direct appeal, the argument he now advances in ground one of his Petition would no longer be considered by Ohio courts—rendering his sole ground for relief procedurally defaulted.

### a. Cause for Default

Petitioner's traverse suggests that "[his] trial counsel's failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel which is a violation of [his] Sixth Amendment Right to the effective assistance of counsel." (R. 10, PageID# 294). Claims of ineffective assistance of counsel, however, cannot provide cause for the procedural default of another claim if the ineffective-assistance claim itself is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Petitioner never alleged in state court that his trial counsel was ineffective or that his appellate counsel was ineffective for failing to assert such a claim. *See Franklin v. Bradshaw*, 695 F.3d 439, 454 (6th Cir. 2012) (A "claim never raised in state court . . . is defaulted."); *State v. Williams*, 99 Ohio St.3d 179, 181 (Ohio

2003) ("[T]here is no right to file successive applications for reopening . . . ."). Notably, the record does not reflect that Petitioner ever filed an application under Ohio Rule of Appellate Procedure 26(B), which governs the reopening of a direct appeal. *Scuba v. Brigano*, 527 F.3d 479, 488-89 (6th Cir. 2007) (appellate counsel's failure to file a timely Rule 26(B) application on petitioner's behalf not sufficient cause).

Finally, to the extent Petitioner relies on his *pro se* status and ignorance of the law to provide cause for this claim's procedural default, it is well-established that "[c]ause for procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (emphasis original) (citations and internal quotations omitted). The Sixth Circuit repeatedly has rejected petitioners' attempts to blame their failure to comply with procedural requirements on their ignorance of the law or on their limited prison resources. *See, e.g.*, *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (finding a petitioner's *pro se* status, ignorance of the law and court procedural requirements, and limited time in a prison law library insufficient to excuse a procedural default). Accordingly, Petitioner has not established any cause for failing to raise a federal Due Process Clause claim before the state courts. Because Petitioner has not demonstrated any cause, the court need not consider the "prejudice" prong of the procedural default analysis of this claim. *See, e.g., Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

### b. Actual Innocence

The Supreme Court has held that the "actual innocence" exception to the cause and prejudice requirement is a "narrow exception," which applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the

substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). To demonstrate "actual innocence," a petitioner must show "'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)). The claim requires a showing of "new reliable evidence" and factual innocence, not mere legal insufficiency. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Here, Petitioner plead guilty to the charges for which he was sentenced. Further, he presents no *new* evidence to show that he is "actually innocent" of the offenses for which he was convicted. Though he has not argued as much, any claim of actual innocence would be inherently unsupportable under the circumstances. Accordingly, the court finds that Petitioner's sole ground for relief is procedurally defaulted and recommends that it be dismissed.

### IV. Conclusion

It is recommended that the Petition be DISMISSED because the sole ground for relief is procedurally defaulted, for the foregoing reasons.

Date: December 29, 2021                s/ David A. Ruiz
                                       United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).**